JAMES F. SCOTT *et al.,* AS TRUSTEE, *Plaintiffs in Error,* v. CITY OF TAMPA, *Defendant in Error.*

1. Municipalities can lawfully exercise only such rights, powers and authority and perform such duties as are conferred upon them expressly or impliedly by valid provisions of law; and such rights, powers, authority and duties are exercised or performed through officers, agents or employes, the municipalities being corporate entities existing only in contemplation of law.

2. Municipalities are not liable in damages for injuries to property caused by the wrongful acts of the officers or agents of the municipalities where such wrongful acts are not done in the exercise of any authority or duty conferred by law upon the municipalities.

3. A municipal corporation is not liable for tortious acts committed by its officers and agents, unless the acts complained of were committed in the exercise of some corporate power conferred upon it by law, or in the performance of some duty imposed upon it by law. Such a corporation may be liable in damages for injuries to others proximately resulting from the doing by its officers in an *unauthorized manner,* of a *lawful* and *authorized* act, but not for doing an *unlawful* or prohibited act.

4. To create a liability against a municipality for the torts of its agents, the act done by the officers or agents of the municipality that causes injury to another must be within the scope of the corporate authority of the municipality as prescribed by its charter, or by positive enactment. If the act complained of is wholly outside of any and all the authority and duties of the municipality, it is not in any event liable.

5. Where in an action for tort it is alleged that the defendant municipality "by and through its mayor, chief of police, and by and through its servants, agents and employes acting under the orders of its mayor and chief of police entered in and upon," "the plaintiffs' premises and building used for offices and convention halls, and forcibly, violently and unlawfully ejected the plaintiff  *  *  *  therefrom, and closed and locked said building" and prevented the plaintiffs from using the same, and in so ejecting the plaintiffs, "destroyed, mutilated, injured, damaged and demolished" the furniture and fixtures, and abstracted and carried away the books of account, minutes, payrolls, contracts and other valuable papers, the declaration is subject to demurrer, as the acts complained of are not within the authority of the municipality to do.

This case was decided by the Court En Banc.

Writ of error to the Circuit Court for Hillsborough County.

### STATEMENT.

The declaration is as follows: "James F. Scott, Y. Suarez and C. Marti by their attorneys Dickenson & Dickenson bring this suit for the use and benefit of Central Trades and Labor Assembly, hereinafter mentioned, against the City of Tampa, a municipal corporation under the laws of the State of Florida located in Hillsborough county, which has been summoned to answer the plaintiffs

in a civil action, for that whereas at the time of the committing of the several acts and grievances hereinafter mentioned the plaintiffs were, and ever since have been, and still are the trustees of Central Trades and Labor Assembly, an unincorporated voluntary society for mutual benefit and protection composed of representatives from the various labor unions and organizations of the said city of Tampa and its vicinity, and as such trustees, at the time of the committing of the said several acts and grievances hereinafter mentioned the plaintiffs were, and ever since have been, and still are the holders of the title to the following described real estate, situate, lying and being within the corporate limits of said city of Tampa, and in said county of Hillsborough and State of Florida, to-wit: The east half of lot seven (7) and the west half of lot eight (8) of block fifty-five (55) of Ybor City, according to a map or plat thereof recorded in the office of the clerk of the Circuit Court of Hillsborough County, Florida, in plat book number one (1) on page eleven (11), and as such trustees were at the several dates and times aforesaid and still are entitled to the possession and were at the time of committing of the said several acts and grievances hereinafter mentioned in the rightful possession and control of said real estate for said uses and purposes, on which said real estate was located a certain two-story frame building, the property of said plaintiffs as trustees aforesaid which said building was used by the said Central Trades and Labor Assembly and by the plaintiffs for their offices for the conduct of their business as a mutual benefit and protective society and organization, and which said building was divided and partitioned into various halls and offices and assembly rooms wherein said Central Trades and Labor Assembly held its

meetings and conventions, offices in and parts of which said building were at said times and dates aforesaid leased and let and rented under contracts of lease and rental by the said plaintiff trustees to various fraternal and benevolent societies and organizations and to various labor unions to the number of twelve or more at and for certain hire and reward by the week and month, from which said source the plaintiffs derived income and funds for the use and benefit of said Central Trades and Labor Assembly in their work and purpose of its organization as a benevolent and protective association, to-wit, an income of not less than seventy-five dollars per month; that said building was furnished with expensive furniture and fixtures of great value, the property of said Central Trades and Labor Assembly and in said offices were kept by the plaintiffs all the records, minutes, payrolls, leases and contracts, insurance policies, charters and instruments of every kind and character belonging to and pertaining to the business of said Central Trades and Labor Assembly, and that said plaintiffs were at the several dates and times hereinafter mentioned, and ever since have been and still are the rightful custodians thereof and as such trustees aforesaid had and held said real estate, said building with its furniture and fixtures, and said records, minutes, payrolls, leases and contracts, insurance policies, and charters and instruments and valuable papers of every kind for the use and benefit of said Central Trades and Labor Assembly and were responsible to said Central Trades and Labor Assembly for the safe keeping thereof; and that on the 17th day of October, A. D., 1910, the said defendant by and through its mayor, chief of police, and by and through its servants, agents and employes acting under the orders of its said mayor and chief of police, entered in and upon the said premises and building of the

plaintiffs aforesaid, and forcibly, violently and unlaw-fully ejected the plaintiffs, the said Central Trades and Labor Assembly and their said tenants of the plaintiffs therefrom, and closed and locked said building and sta-tioned police officers and guards about said premises to prevent, and who did so prevent the plaintiffs and their said tenants from the use of said premises and from access to their said records, for a long space of time, to-wit, for two weeks and upwards; and in so ejecting the plaintiffs, the said Central Trades and Labor Assembly and their said tenants from said premises and building, destroyed, mutilated, injured, damaged and demolished the said furniture and fixtures of the plaintiffs and injured and damaged said building of the plaintiffs to the extent of five hundred dollars which the plaintiffs allege as special damages to them accruing; and then and there abstracted and took and carried away the books of account, minutes, payrolls, leases and contracts, policies, charters and val-uable papers, instruments and records and lists of mem-bers of the plaintiffs and of the said Central Trades and Labor Assembly and their said tenants, which said papers and records cannot now be duplicated or proven, and failed and refused and still fail and refuse to return the same to the plaintiffs, and thereby threw the business of the plaintiffs and of said Central Trades and Labor Assem-bly and their said tenants into utter confusion, and there-by deprived the plaintiffs of divers rents and profits from their said tenants as aforesaid, and thereby deprived the plaintiffs of large sums and amounts which the plaintiffs derived from dues from its said membership and great loss in membership on account of being unable to hold meetings and conventions in their said premises and on account of being unable to meet its weekly payrolls, on account of the loss of their said records and papers and

lists of members, and deprived the plaintiffs of the use of their said offices and of a place to meet and transact their said business as a mutual benefit and protective association; whereby the plaintiffs, suing as aforesaid for the use and benefit of said Central Trades and Labor Assembly, say that they have been injured and sustained damages, and wherefore they bring this suit and seek judgment and claim damages against the said defendant in the sum of twenty thousand dollars ($20,000.00)."

A demurrer to the declaration was sustained, the cause was dismissed, and the plaintiffs appealed.

*Dickinson & Dickinson,* for Plaintiffs in Error.

*G. E. Mabry,* for Defendants in Error.

WHITFIELD, C. J., (*After stating the facts.*)—Municipalities can lawfully exercise only such rights, powers and authority and perform such duties as are conferred upon them expressly or impliedly by valid provisions of law; and such rights, powers, authority and duties are exercised or performed through officers, agents or employes, the municipalities being corporate entities existing only in contemplation of law.

In the absence of organic or statutory provisions regulating the subject, the liability of a municipal corporation in damages for injuries to others caused by the negligence or other torts of its officers, agents and employes, while acting within the scope of their authority for the municipality, depends upon the nature of the authority being exercised or of the duty being performed or omitted by the officers, agents or employees. Where the authority being exercised is essentially goverental in its nature, the

municipality is in general not liable for the torts of its agents committed in exercising such authority.

Where a tort is committed by the officers or agents of a municipality in the exercise of authority or in the performance of a duty that is not conferred or imposed upon the municipality by law, the municipality is not liable, for if a municipality has no lawful authority, its officers cannot assume it so as to bind the municipality.

Municipalities are not liable in damages for injuries to property caused by the wrongful acts of the officers or agents of the municipalities where such wrongful acts are not done in the exercise of any authority or duty conferred by law upon the municipalities.

The liability of municipalities for the torts of their agents is predicated upon the theory that the municipalities through their agents wrongfully perform or omit to exercise some authority or duty (not essentially governmental in its nature and involving primary discretion) that is imposed by law upon the municipalities; and if a tort that caused an injury was committed in doing something the municipality had no authority to do, the tort may be that of the persons committing it, but not of the municipality, and the doctrine of *respondeat superior* does not apply to render the municipality liable in damages for such tort. A municipal corporation is not liable for tortious acts committed by its officers and agents, unless the acts complained of were committed in the exercise of some corporate power conferred upon it by law, or in the performance of some duty imposed upon it by law. Such a corporation may be liable in damages for injuries to others proximately resulting from the doing by its officers in an *unauthorized manner,* of a *lawful* and *authorized,* act, but not for doing an *unlawful* or prohibited

act.   To create a liability against a municipality for the torts of its agents, the act done by the officers or agents of the municipality that causes injury to another must be within the scope of the corporate authority of the municipality as prescribed by its charter, or by positive enactment.   If the act complained of is wholly outside of any and all the authority and duties of the municipality, it is not in any event liable.   City of Orlando v. Pragg, 31 Fla., 111, 12 South. Rep. 368.

The declaration alleges that "the said defendant by and through its mayor, chief of police, and by and through its servants, agents and employes acting under the orders of its said mayor and chief of police, entered in and upon the said premises and building of the plaintiffs aforesaid, and forcibly, violently and unlawfully ejected the plaintiffs * * * therefrom, and closed and locked said building and stationed police officers and guards about said premises to prevent, and who did so prevent the plaintiffs and their said tenants from the use of said premises and from access to their said records, for a long space of time * * * and in so ejecting the plaintiffs, * * * and their tenants from said premisis and building, destroyed, mutilated, injured, damaged and demolished the said furniture and fixtures of the plaintiffs and injured and damaged said building * * * and then and there abstracted and took and carried away the books of account, minutes, payrolls, leases, contracts, policies, charters and valuable papers, instruments and records" &c.   These allegations taken with the orders clearly indicate that the acts complained of were such acts as are not within the authority or duty of the municipality to lawfully do, to command or to permit.   There is no allegation that the acts complained of were done in abating a supposed nuisance.   No color of authority is

alleged or appears for ejecting the plaintiffs from their property or for appropriating or destroying the property as alleged by the municipality through its officers, agents and employes, under the circumstances alleged in the declaration or under any circumstances. It is expressly alleged that the ejection was *"forcible, violently and unlawfully"* done; but there was no lawful authority to eject the plaintiffs peaceably and without violence, and consequently the city is not liable for the tort complained of.

In the case of City of Orlando v. Pragg, *supra* the property taken being wild animals, reptiles, &c., was of such a nature that it could have been a nuisance, and the city could have at its peril acted for itself or under the direction of the board of health in abating a nuisance; and where the act of abating the nuisance is a corporate rather than a governmental function, the city would be liable for torts committed in exercising its independent authority or in performing the duty imposed upon it by the board of health. For these reasons the declaration in that case was not subject to the demurrer. Here the property taken cannot be regarded as a nuisance; and if the place was the scene of a breach of the peace, the city had no authority to take or to destroy or appropriate the property to preserve the peace, even if keeping the peace were not a primary governmental function, for the tortious performance of which by its officers the municipality is not liable in damages. The acts of the officers complained of in this case were not authorized to be done by the municipality, and as the authority could not be assumed so as to bind the municipality, it is consequently not liable in damages for the tort alleged.

The judgment is affirmed.

TAYLOR, SHACKLEFORD, COCKRELL and PARKHILL, J. J., concur.

HOCKER, J., absent, concurred in the opinion as prepared.