139 So.2d 916 (1962)
Francis H. SANDFORD, Appellant,
v.
FIRESTONE TIRE & RUBBER COMPANY, a Corporation, Appellee.
No. 2498.
District Court of Appeal of Florida. Second District.
April 6, 1962.
Rehearing Denied April 26, 1962.
*917 Bobby A. Webb and J. Hal Conner, Summerlin & Conner, Winter Haven, for appellant.
Paul Ritter, Winter Haven, for appellee.
WHITE, Judge.
Appellant Francis H. Sandford, plaintiff below, seeks reversal of judgment on directed verdict for the defendant on the first count of the complaint and reversal of judgment for the defendant notwithstanding a $7,000.00 verdict for the plaintiff on the second count of the complaint. The prime question on appeal pertains to the judgment notwithstanding the verdict.
This is a slip and fall case. The plaintiff lived near a service station owned by the defendant Firestone Tire & Rubber Company. On one of his daily walks to down town Winter Haven the plaintiff was proceeding on the sidewalk with one William Taylor. As they approched the defendant's station the sidewalk in front of them was blocked by a parked truck owned by the defendant. The plaintiff and Taylor proceeded around the truck and onto defendant's paved premises and, while speaking to an employee of the defendant, plaintiff slipped on a "spot" of oil and fell *918 and sustained painful and costly personal injuries. The parties pleaded the usual issues of negligence and contributory negligence.
The plaintiff did not see the oil spot until after he fell. William Taylor testified that he and the plaintiff were walking together when the plaintiff fell and that he, Taylor, likewise did not see the oil spot until after the plaintiff fell. He stated that he heard someone say that a customer was looking at a lawn mower and had turned it upside down causing the oil to spill out. An employee of the defendant mentioned that someone was supposed to be getting something to clean up the oil. No one was left to guard the area where the oil was spilled, nor was any warning given. This was verified by W.F. Payne, a then employee of the defendant. He testified that a prospective customer turned a used mower over to examine the blade and the oil ran out; that he, the witness, went into the building to get some "oil dry" to clean it up but that meanwhile, before his return, the plaintiff slipped and fell. There was testimony that the spot of oil was amber or black in color and four to five inches in diameter
The two counts of the complaint were identical except that the first count alleged the dangerous condition to be latent while the second count alleged the same condition to be patent. A verdict was directed for the defendant as to the plaintiff's first count at the close of plaintiff's case, and the trial proceeded on the second count. The trial court took the view that the status of the plaintiff was that of an invitee if the jury should find that the defendant's parked truck blocked the sidewalk and caused the plaintiff to proceed around it onto the defendant's premises. This ruling followed the holding in Virginia Stage Lines v. Spencer, 1946, 184 Va. 870, 36 S.E.2d 522, wherein a bus was parked in such manner as to force children off the highway and onto a concrete area in front of a filling station which the bus line had leased as its terminal. Injuries were inflicted on the children by the defendant's bus and the court held that the children were implied invitees toward whom it was the defendant's duty to exercise reasonable care.
In the instant case, after the plaintiff rested with reference to the second count of his complaint, the defendant moved for a directed verdict and the court reserved ruling. The case was submitted to the jury who returned a verdict for the plaintiff, assessing the damages at $7,000.00. The court thereafter, in ruling on the defendant's pre-verdict motion, entered judgment for the defendant notwithstanding the verdict. The court noted that it is common knowledge that the surface of a filling station area is frequently spotted with oil from motor vehicles which are supplied with oil and gasoline in such installations. "Persons walking in such areas," said the court, "are charged with such knowledge and their consequent duty to observe that which can be observed for their own protection. It is obvious from the evidence in this case that had the plaintiff looked down upon the area in which he would step, he would have seen the oily spot and avoided it."
The plaintiff's principal points on appeal gravitate naturally to the question that concerns us, viz., whether or not it was error to enter judgment notwithstanding the verdict. There was undoubtedly some evidence tending to show negligence on the part of the defendant. Assuming that the plaintiff was charged with knowledge that service station areas are frequently spotted with oil, did his failure to observe and avoid this particular spot amount to contributory negligence as a matter of law? If so, the judgment must be affirmed; if not, the judgment must be reversed.
The judgment under assault was based upon the rationale of Tweedale v. City of St. Petersburg, Fla.App. 1961, 125 So.2d 920; Bowles v. Elkes Pontiac, Fla. 1953, 63 So.2d 769; and Andrews v. Narber, Fla. *919 1952, 59 So.2d 869. In the first case plaintiff Tweedale was an invitee at a municipal swimming pool and slipped as he was entering the shower room before using the pool. The plaintiff contended that the slippery floor constituted a hidden danger due to the swinging doors at the entrance of the shower room and a lack of warning signs. In affirming the trial court's summary judgment for the defendant, this court observed that the condition of the shower room floor was clearly discernible if the plaintiff had used his ordinary senses:
"* * * The condition was neither latent nor concealed but was obvious and apparent. The plaintiff knew he was entering a shower room of a public recreational facility. It may be accepted as a matter of common knowledge that a public shower room floor, from its very nature when the room is in use as in this case, might be in a slippery condition."
The next case of Bowles v. Elkes Pontiac Company, supra, involved uneven floor levels which allegedly were not clearly discernible and caused the plaintiff to fall. It was a case of structural design in a mercantile establishment. No extraneous substance or impeding object was involved. The court, reversing its previous position in a close split decision, held that the amended complaint was insufficient to charge liability for what amounted to an integral condition which was plainly discernible. The facts of the case are materially distinguishable from the present situation.
Andrews v. Narber, supra, is the third case mentioned as tending to support the judgment appealed. In that case the plaintiff slipped on a wet walkway adjacent to a swimming pool. The court, in sustaining dismissal of the complaint, stated that it was a matter of common knowledge that water is constantly thrown on walks adjacent to swimming pools and that the walks are generally slippery. The court cited 52 Am.Jur., Theatres, Shows, Exhibitions, etc., § 71, for the proposition that the proprietor of a bathing resort is not liable for injury to a patron due to the slippery condition of the floor "necessarily incident to the use of the place for swimming or bathing purposes."
Analysis of the swimming pool cases discloses that the courts found no showing of negligence on the part of the defendants. Contributory negligence therefore would seem to have been beside the issue. Each case nevertheless stressed the "known danger" aspect and concluded that the plaintiff risked the particular danger. Such appears to be the import of the reasoning in those cases. Let us see, then, whether the "known danger" thesis applies here so as to justify the trial court in taking the case from the jury after verdict and deciding it to the contrary as a matter of law.
It is notable in the swimming pool cases that there was no distraction or diversion caused by the defendant and no danger for the plaintiff reasonably to anticipate other than that which caused the injury. The "known danger" was singular, relatively constant and imminent. The plaintiff merely had to look where and how he placed his feet. The plaintiff here was diverted by the defendant onto the defendant's premises, thus becoming an implied invitee as found by the jury under appropriate instructions by the court. On such diverted course there were potential hazards, other than oil spots, which might be encountered.
Service station pavements are frequently marked by stains and blemishes resulting from former deposits of oil and chemicals. Service station operators recognize the constant use of these areas and are continually watching and causing the pavement to be scoured and otherwise kept free from oil slicks and other susbtances which might be dangerous; but the harmless outlines of such deposits often remain. It would take a strained sense of the duty *920 of observation and self-preservation to require every service station invitee to concentrate exclusively on the pavement in a synthetic hop scotch to differentiate dangerous spots from harmless ones.
Where the line of liability is finely drawn, as in many slip and fall cases, the position of the court is commensurately delicate. Since negligence and contributory negligence are generally regarded as factual issues, subject to legal definement, the trial court should act with great caution and practical certainty before setting aside a verdict. See Ely v. Atlantic Coast Line Railroad Co., Fla.App. 1962, 138 So.2d 521; Alessi v. Farkas, Fla.App. 1960, 118 So.2d 658; Cutchins v. Seaboard Airline Railroad Co., Fla. 1958, 101 So.2d 857; Hilkmeyer v. Latin American Air Cargo Expediters, Inc., Fla. 1957, 94 So.2d 821; Katz v. Bear, Fla. 1951, 52 So.2d 903. If there is room for a difference of opinion between reasonable men as to the existence of evidentiary facts from which an ultimate fact is sought to be established, or if there is room for such difference as to the inferences which reasonably might be drawn, the court should submit the case to the jury. In such cases the jury's conclusion should prevail and not the view of the judge. Budgen v. Brady, Fla.App. 1958, 103 So.2d 672, 674.
In Hanson v. Shell's City, Inc., Fla. App. 1961, 133 So.2d 573, the plaintiff fell when she stepped from a sidewalk onto an allegedly defective parking area owned by the supermarket. The plaintiff stated that she was looking for her car and could have seen the defect if she had been looking down. In reversing summary judgment for the defendant, the court said:
"Even if such testimony warrants the conclusion that the area alleged to be defective would have been visible to Mrs. Hanson had she been looking in that direction and not for her car, the question of contributory negligence would still be open. The Supreme Court in City of Jacksonville v. Stokes et al., Fla. 1954, 74 So.2d 278, said:
"`* * * If visibility alone settled contributory negligence every case of slipping on a floor or of encountering any stationary object would automatically be a case of nonliability for in all these cases the condition which caused the harm was visible. The question always is whether the plaintiff used due care for his own safety, taking into account all the circumstances, of which the visibility of the object encountered is an important one, but still only one of the circumstances.'

See also Purdon v. Cohen, Fla.App. 1961, 126 So.2d 575; Warring v. Winn-Dixie Stores, Inc., Fla.App. 1958, 105 So.2d 915; Shell's Super Store, Inc. v. Parker, Fla.App. 1958, 103 So.2d 884.
"In the case at bar, the deposition of Mrs. Hanson and the exhibits contained in the record do not show contributory negligence as a matter of law, and accordingly, it was error to summarily adjudicate that question. It follows, therefore, that the judgment appealed from be reversed." (emphasis supplied)
A majority of the court in City of Jacksonville v. Stokes et al., Fla. 1954, 74 So.2d 278, cited in the Hanson case, held that the question of contributory negligence was for the jury when a twelve year old girl fell in a hole in the sidewalk in front of her home. Although the walk was of uneven brick and was used by her every day, there was no evidence that she knew of the particular hole or saw it. The court held that the plaintiff was not chargeable with contributory negligence as a matter of law and affirmed the judgment on jury verdict for $1,000.00. The majority opinion stated: "The question is whether one should be aware of the danger."
*921 In Alessi v. Farkas, Fla.App. 1960, 118 So.2d 658, 660, this court speaking through Judge Allen said:
"The question before this court, therefore, is whether the testimony and evidence adduced in the trial below shows that the plaintiff, Aliene Alessi, was guilty of contributory negligence as a matter of law. It is fundamental that a negligence cause should never be withdrawn from the jury unless it appears as a matter of law that a recovery cannot be had upon any view of the facts which the evidence reasonably tends to establish. Gudath v. Culp Lumber Company, Fla. 1955, 81 So.2d 742, 53 A.L.R.2d 846. Moreover, it is generally held that the issue of contributory negligence is to be determined by the jury and ordinarily it should not be disposed of by the court in a peremptory manner. 23 Fla.Jur., Negligence, Sec. 129. Thus, when the question of contributory negligence arises on a state of facts from which reasonable men might draw different conclusions, either as to the facts or the conclusions or inferences to be drawn therefrom, the question should be submitted to the jury."
And again:
"Courts should be reluctant to set aside jury verdicts or to grant a directed verdict after the jury's verdict has been entered when the evidence adduced is reasonably susceptible of supporting the issue or issues presented. * * * A party moving for a directed verdict admits not only the facts established by the evidence presented but also admits every conclusion favorable to the adverse party that a jury might reasonably infer from the evidence. * * * [U]nless the evidence as a whole, with all reasonable deductions to be drawn therefrom, points to only one possible conclusion, the trial judge is not warranted in withdrawing the case from the jury or setting aside a jury's determination on conflicting evidence and substituting instead his own evaluation of the evidence." (emphasis added)
The conclusion is that judgment non obstante veredicto should not have been entered in the instant case. There was appreciable evidence tending to establish negligence of the defendant and the other necessary components of liability, including plaintiff's status as an invitee and the absence of contributory negligence. These issues were properly submitted to the jury. A new trial, therefore, would be pointless where nothing could be accomplished except to have another jury review the case. Nott v. Baughman, Fla. App. 1961, 133 So.2d 767; Redwing Carriers v. Helwig, Fla.App. 1959, 108 So.2d 620.
The judgment appealed is reversed and the cause remanded with directions to reinstate the verdict and enter judgment thereon.
Reversed with directions.
ALLEN, Acting C.J., and KANNER, J., concur.